UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JIM HAWK TRUCK-TRAILERS OF SIOUX FALLS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CROSSROADS TRAILER SALES & SERVICE, INC., ALVIN SCHOLTEN, MARK SNEVE, MICHAEL FALOR, DAVID JENSEN, TRACY THOMPSON, NICK BIG EAGLE, CHAZ KOHERST, TAYLOR LARSON, and DEREK FALOR, <br><br> Defendants. | 4:20-CV-04058-KES <br><br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

Plaintiff, Jim Hawk Truck-Trailers of Sioux Falls, Inc., brought suit against a competitor business and nine former employees for misappropriation of trade secrets and several state-law tort claims. Docket 1. Defendants and former Jim Hawk mechanics, Nick Big Eagle, Chaz Kohorst, and Taylor Larson (the mechanics), move to dismiss the causes of action asserted against them: breach of the duty of loyalty, tortious interference with business relations, civil conspiracy, unjust enrichment, and unfair competition. Docket 43. Jim Hawk opposes the mechanics' motion. Docket 54. For the following reasons, the court grants in part and denies in part the motion to dismiss.

## FACTUAL BACKGROUND

The facts alleged in the complaint, accepted as true, are as follows:

Jim Hawk Truck Trailers of Sioux Falls, Inc., is a semi-truck trailer dealer throughout the Midwest. Docket 1 ¶ 15. Founded in 1974, the company's principal place of business is Sioux Falls, South Dakota. *Id.* ¶¶ 1, 15. Jim Hawk provides sales, parts, service, and rentals of truck trailers from the industry's most respected brands. *Id.* ¶ 15. Their excellent customer service is the backbone of their large and loyal customer base. *Id.*

Nick Big Eagle, Chaz Koherst, and Taylor Larson are individuals who were employed by Jim Hawk as mechanics until March 2020. *Id.* ¶¶ 8-10. Other named individual defendants were former Jim Hawk employees until December 2019 or March 2020 and worked in the management, sales, service, and parts departments. *Id.* ¶¶ 3-7. Crossroads Trailer Sales and Service, Inc., is a direct competitor of Jim Hawk in South Dakota and the surrounding area. *Id.* ¶ 52. Crossroads is actively attempting to expand its business and is in direct competition with Jim Hawk. *Id.* ¶ 54.

Jim Hawk has spent time, effort, and resources developing goodwill with its employees and training its employees to perform their work efficiently and well. *Id.* ¶ 17. This training includes knowledge of Jim Hawk's products, obstacles facing its customers, firsthand knowledge of customers' needs, and Jim Hawk's unique pricing and implementation strategy. *Id.* Jim Hawk has also developed relationships and agreements with vendors and manufacturers in the industry. *Id.* ¶ 18. Jim Hawk considers its customer lists and

relationships, customer preferences, vendor and dealer information, and pricing information to be trade secrets, confidential, and proprietary. *Id.* ¶ 21. Jim Hawk has adopted policies regarding the confidentiality of information received by employees and for the return of Jim Hawk property and information upon the end of employment. *Id.* ¶¶ 21-22. Specifically, Jim Hawk prohibits sending or posting confidential material, trade secrets, or proprietary information outside of the organization. *Id.* ¶ 22. All of the aforementioned training, employee knowledge, and company information—including trade secrets and confidential information, but collectively referred to by Jim Hawk as "confidential information"—is not generally known to, and not readily ascertainable by, others in the industry. *Id.* ¶ 23. Misappropriation of such confidential information would enable others in the industry to create unfair competitive marketing. *Id.* ¶ 24.

      The mechanics and other former Jim Hawks employee defendants—collectively referred to as "Individual Defendants" in the complaint—all worked for Jim Hawk at the company's Sioux Falls location. *Id.* ¶¶ 12, 25. All Individual Defendants had access to confidential and proprietary information regarding Jim Hawk's dealer and vendor information, as well as specific pricing information, customer preferences, and information on the profitability of the business. *Id.* ¶ 27. All Individual Defendants had direct customer contact. *Id.* ¶ 28. The mechanics had knowledge of Jim Hawk's standards of service on trailers, among other things. *Id.* ¶¶ 45-47.

Crossroads is improperly competing with Jim Hawk, or attempting to do so, by hiring a significant number of Jim Hawk's sales and management employees within a short period of time. *Id.* ¶ 55. Crossroads and former Jim Hawk employees used confidential information to contact and solicit business from Jim Hawk's customers for the benefit of Crossroads. *Id.* ¶¶ 55, 59-60. Crossroads hired the mechanics in order to deliver the same specialized standards of service as Jim Hawk. *Id.* ¶ 55. This resulted in unfair competition and harm to Jim Hawk's ability to service its customers. *Id.* The Individual Defendants also harmed Jim Hawk by conspiring with each other to leave Jim Hawk around the same time and use Jim Hawk's confidential information. *Id.* ¶ 58. The Individual Defendants have used Jim Hawk's trade secrets and confidential information to contact customers, vendors, and suppliers of Jim Hawk. *Id.* ¶ 60. Some of this conduct occurred while the Individual Defendants were still working for Jim Hawk. *Id.* ¶¶ 67-68. This conspiracy and use of confidential information has harmed Jim Hawk's business. *Id.* ¶¶ 61-62. Customers who previously purchased trailers, trailer parts, and trailer services from Jim Hawk now exclusively or predominantly purchase from Crossroads. *Id.* ¶ 71.

Jim Hawk brought claims against certain defendants, excluding the mechanics, for misappropriation of trade secrets under 18 U.S.C. § 1836 and SDCL § 37-29-1. *Id.* ¶¶ 72-86. The mechanics are named as defendants in the claims for breach of the duty of loyalty, tortious interference with business relations, civil conspiracy, unjust enrichment, and unfair competition. *Id.*

¶¶ 87-95, 101-118.

The court has original jurisdiction over the first cause of action in the complaint because it is brought under the Defend Trade Secrets Act, 18 U.S.C § 1391. 28 U.S.C. § 1331. The court has supplemental jurisdiction over the remaining causes of action brought under state law because they "derive from a common nucleus of operative fact" and are "part of the same case or controversy." *Myers v. Richland Cnty.*, 429 F.3d 740, 746 (8th Cir. 2005) (internal quotation omitted); 28 U.S.C. § 1367. The parties do not dispute the court's jurisdiction.

## LEGAL STANDARD

Rule 12(b)(6) provides for dismissal of a claim if the claimant has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). The "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotation marks and citation omitted). "If a plaintiff

cannot make the requisite showing, dismissal is appropriate." *Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008).

## DISCUSSION

### I. Displacement under SDCL § 37-29-7

The mechanics claim that "most of [Jim Hawk]'s claims are simply trade secret claims restated as separate tort claims," and thus are displaced by the Uniform Trade Secrets Act (UTSA). Docket 44 at 7-8. Jim Hawk argues that the UTSA's displacement provision does not apply to the claims against the mechanics because the mechanics only misappropriated "confidential" information, not trade secrets. Docket 54 at 6-7. Jim Hawk also asserts that its claims against the mechanics are independent tort claims derived from conduct apart from alleged misuse of information, whether confidential or trade secret. *Id.* at 5-6.

South Dakota's version of the UTSA, codified at SDCL ch. 37-29, seeks to "make uniform the law . . . among states enacting [the UTSA]." SDCL § 37-29-8. The displacement provisions states, in relevant part:

> (a) Except as provided in subsection (b), this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
> (b) This chapter does not affect . . . [o]ther civil remedies that are not based upon misappropriation of a trade secret . . . .

§ 37-29-7. Essentially, the UTSA "prevents a plaintiff from merely restating their trade secret claims as separate tort claims." *Weins v. Sporleder (Weins II)*, 605 N.W.2d 488, 491 (S.D. 2000). When analyzing a claim under the UTSA, "the issue is not what label the plaintiff puts on their claims." *Id.* Instead, the

6

court should "look beyond the label to the facts being asserted in support of the claims." *Id.*

Here, Jim Hawk states that the information in the mechanics' possession was "confidential" information and not a trade secret, and as a result the claims against the mechanics should not be analyzed under the UTSA. *See* Docket 54 at 7-8. The mechanics argue that Jim Hawk's reliance on the "confidential" label is merely an attempt to avoid the UTSA's displacement provision by not pleading a trade secret claim and instead restating the claim as separate tort claims. Docket 44 at 7-8.

The mechanics point to *Weins II* to support their argument that the displacement provision applies even though the claims against them are not labeled as "misappropriation of trade secrets." *Id.* at 7. In *Weins II*, a manufacturer of livestock feed products sued a competitor for misappropriation of trade secrets and various tort claims. 605 N.W.2d at 489. On the case's first appeal, the South Dakota Supreme Court determined that the information in question was not a trade secret and that even if it was a trade secret, there was no misappropriation. *Id.* Thus, the court held that the trial court erred when it denied defendants' motion for judgment notwithstanding the verdict. *Id.* On the second appeal, the South Dakota Supreme Court held that once plaintiffs' trade secret misappropriation claim failed as a matter of law, plaintiffs could not then seek recovery under their tort claims because they "ar[o]se[] out of the *alleged* misappropriation of a trade secret" and thus were displaced by the UTSA. *Id.* at 492 (emphasis added). The Supreme Court held that to have

7

permitted recovery on the tort claims after denying judgment for the plaintiff under the UTSA would have rendered the displacement provision of the UTSA "meaningless." *Id.* But where a cause of action amounts to something "more than," or "apart from," the misappropriation of a trade secret, the court should allow that cause of action to proceed. *Id.*

In *Mortgage Specialists, Inc. v. Davey*, the New Hampshire Supreme Court cited to *Weins II* in support of its holding that the UTSA "preempts claims that are based upon the unauthorized use of information, regardless of whether that information meets the statutory definition of a trade secret." 904 A.2d 652, 777 (N.H. 2006). There, the court found that the majority of courts analyzing the issue have found that the UTSA preempts claims arising out of the unauthorized use of information, even if that information does not ultimately meet the definition of a trade secret. *Id.*

Here, the court agrees with the analysis in *Weins II* and later reinforced by *Davey*. Allowing a plaintiff to plead a claim using different labels in order to avoid the displacement provision of the UTSA would render the statute meaningless. As the mechanics point out, Jim Hawk does not seem to differentiate between information that is "confidential" or a "trade secret." Docket 55 at 4; *see, e.g.,* Docket 1 ¶¶ 20-23. At one point in its complaint, Jim Hawk collectively refers to trade secrets *and* confidential information *together* as "confidential information." *Id.* ¶ 23. And Jim Hawk "considers its customer lists and relationships, customer preferences, vendor and dealer information to be *trade secrets, confidential, and proprietary.*" *Id.* ¶ 21 (emphasis added).

8

Throughout the complaint, Jim Hawk uses the labels "confidential" and "trade secret" interchangeably to the point they have no clear distinction. Thus, to the extent the tort claims arise out of the alleged misappropriation of confidential or trade secret information, the tort claims are displaced by the UTSA. But consistent with *Weins II*, a tort claim alleged against the mechanics that amounts to "more than" or "apart from" the misappropriation of confidential information should not be analyzed under the UTSA and instead analyzed under Rule 12(b)(6). The court will address each of the tort claims individually to determine if the claim is displaced by the UTSA.

### A.   Fourth Cause of Action – Tortious Interference with Business Relations

Jim Hawk alleges that the mechanics "improperly solicited Jim Hawk's customers or prospective customers to terminate or not renew their relationships and/or to not enter into new contractual relationships with Jim Hawk and to instead work with the Individual Defendants and/or Crossroads." Docket 1 ¶ 94. This claim alleges that the mechanics diverted business from Jim Hawk based on the mechanics' knowledge and use of confidential information, namely Jim Hawk's customer and potential customer list. Docket 1 ¶¶ 60, 62. Thus, the claim of tortious interference with business relations is displaced by the UTSA.

### B.   Seventh Cause of Action – Unjust Enrichment

Jim Hawk alleges that the mechanics were unjustly enriched when they "obtained valuable and secret information regarding Jim Hawk's customers, vendors, dealers and pricing information without having incurred the cost and

effort to product [sic] the information." Docket 1 ¶ 107. The complaint further alleges that the confidential information was then misappropriated to disrupt Jim Hawk's business. Docket 1 ¶¶ 60, 62. The cause of action rests solely on the use or misappropriation of information that is secret or confidential. *See id.* ¶¶ 106-109. Thus, the claim for unjust enrichment against the mechanics is displaced by the UTSA.

  **C.**  **Eighth Cause of Action – Unfair Competition**

Jim Hawk alleges that "the Individual Defendants are now unfairly competing with Jim Hawk and exploiting Jim Hawk's goodwill by contacting and soliciting Jim Hawk's customers . . . as well as Jim Hawk's manufacturer, Great Dane, and its vendors in an effort to obtain business for . . . Crossroads." *Id.* ¶ 117. Jim Hawk asserts that this unfair competition on the part of the mechanics arises from the use of Jim Hawk's confidential information to pursue Jim Hawk's customers, vendors, and manufacturers for the benefit of Crossroads. *Id.* ¶ 116. Without more allegations than the unauthorized use of confidential information, the tort claim as against the mechanics is displaced by the UTSA.

  **D.**  **Sixth Cause of Action – Civil Conspiracy – Unfair Competition**

The mechanics argue that the cause of action for civil conspiracy "appear[s] to be based upon the allegation that the 'Individual Defendants' misappropriated Plaintiff's confidential information." Docket 44 at 7-8. A civil conspiracy may exist only if there is an underlying tort. *Kirlin v. Halverson*, 758 N.W.2d 436, 455 (S.D. 2008). Here, the civil conspiracy claim is based on the

underlying tort of unfair competition. Because the tort of unfair competition is displaced by the UTSA, the claim for civil conspiracy cannot stand on its own. Thus, the cause of action for civil conspiracy against the mechanics is displaced by the UTSA.

### E.     Third Cause of Action – Breach of Duty of Loyalty

Jim Hawk asserts that the mechanics breached the duty of loyalty owed to Jim Hawk by "preparing to compete with Jim Hawk's business while still employed, . . . soliciting interest for their new business while employed by Jim Hawk, taking confidential information belonging to Jim Hawk, and diverting business from Jim Hawk." Docket 1 ¶ 89. Jim Hawk alleges that the mechanics used confidential information to contact Jim Hawk's customers, vendors, and suppliers on behalf of Crossroads in order to harm Jim Hawk's business. Docket 1 ¶¶ 60-62. Here, only part of the claim is based on the unauthorized use of information—namely, taking confidential information and using that to divert business away from Jim Hawk. Because the complaint also alleges that the mechanics prepared to compete with Jim Hawk while still employed by Jim Hawk, the claim alleges more than just misappropriation of a trade secret. *See Paint Brush Corp., Parts Brush Div. v. Neu*, 599 N.W.2d 384, 393 (S.D. 1999) ("There is no doubt that there can be a breach of a duty of loyalty in the employment context without a misappropriation of a trade secret being involved."). Thus, the third cause of action against the mechanics is displaced in part by the UTSA. The court will consider the remainder of the claim under Rule 12(b)(6).

11

## II. Motion to Dismiss for Failure to State a Claim

Jim Hawk's claim for breach of the duty of loyalty is the only claim against the mechanics to survive in part the UTSA displacement analysis. Thus, the court now analyzes the claim under the Rule 12(b)(6) standard.

In the third cause of action, Jim Hawk alleges that the mechanics breached the duty of loyalty they owed to Jim Hawk by "preparing to compete with Jim Hawk's business while still employed, upon information and belief soliciting interest for their new business while employed by Jim Hawk, taking information belonging to Jim Hawk, and diverting business from Jim Hawk." Docket 1 ¶ 89. SDCL § 60-2-13 establishes the duty of loyalty an employee owes to an employer: "An employee who has any business to transact on his own account, similar to that entrusted to him by his employer, must always give the [employer] the preference."

Jim Hawk and the mechanics cite to *Setliff v. Akins*, 616 N.W.2d 878 (S.D. 2000), for the relevant legal principles for a breach of duty of loyalty claim. Docket 54 at 10; Docket 44 at 15. There, Dr. Setliff alleged that Dr. Akins, a former doctor in Dr. Setliff's clinic, breached his duty of loyalty and other claims, after Dr. Akins left his employment with Dr. Setliff without warning and opened his own competing medical office. *Akins*, 616 N.W.2d at 884. Dr. Setliff alleged that Dr. Akins breached his duty of loyalty by using for his own benefit information he learned from Dr. Setliff, conducting business activities for his own benefit while in the employ of Dr. Setliff, taking advantage of Dr. Setliff's business opportunities, secretly communicating with and

12

soliciting and/or hiring Dr. Setliff's employees while still employed by Dr. Setliff, and secretly communicating with or soliciting Dr. Setliff's patients while still employed by Dr. Setliff. *Id.* at 887.

When analyzing the breach of duty of loyalty claim, the South Dakota Supreme Court stated that such claims are "extremely fact-sensitive." *Akins*, 616 N.W.2d at 886. Such factual inquiry would determine whether an employee acted contrary to his employer's interests while so employed. *Id.* The Supreme Court recognized that while it is permissible for an employee to make arrangements for new employment with a competitor while still employed, an employee cannot solicit customers for a rival business or do similar acts that directly compete with the employer's business while still employed. *Id.* The Supreme Court observed that it is the nature of the employee's preparations while employed by the employer that are significant in determining whether a breach has occurred. *Id.* Because a question of fact existed, the Supreme Court reversed the trial court's grant of summary judgment that was in favor of Dr. Akins. *Id.*

In *Setliff v. Stewart*, the South Dakota Supreme Court expanded on its duty of loyalty analysis. 694 N.W.2d 859, 867 (S.D. 2005). The court stated that an employee is not only permitted to make arrangements for new employment, but also "to make arrangements to compete in some cases." *Id.* The Supreme Court observed that the employee's preparations to compete with an employer are significant in determining whether the duty of loyalty has been breached. *Id.*

13

In *Akins* and *Stewart*, many facts were present that the Supreme Court considered. While still employed, Dr. Akins and Stewart established a competing business and allegedly solicited patients and fellow employees to follow them at their rival business. *Akins*, 616 N.W.2d at 878; *Stewart*, 694 N.W.2d at 864. Dr. Akins was subject to an employment contract. *Akins*, 616 N.W.2d at 885. Dr. Akins held a position of trust or confidence within his clinic and was a crucial employee. *Stewart*, 694 N.W.2d at 869. He left his employment without providing notice and misled Dr. Setliff just a week earlier while discussing their future relationship. *Id.* at 869-70. The departure of Dr. Akins was harmful to Dr. Setliff's business. *Id.* Because analysis of the breach of duty of loyalty claim is "extremely fact-intensive," no single fact is dispositive. *See Akins*, 616 N.W.2d at 886.

Here, the complaint alleges that the mechanics "prepar[ed] to compete with Jim Hawk's business while still employed" by Jim Hawk. Docket 1 ¶ 89. Specifically, the complaint alleges that the mechanics were responsible for delivering high quality service to Jim Hawk's customers, and the three mechanics' resignations within a period of six days without notice harmed Jim Hawk's ability to serve its customers. *Id.* ¶¶ 26, 55, 58, 61, 64, 66. While still employed by Jim Hawk, the mechanics also allegedly diverted business from Jim Hawk and "attempted to determine if the customers with whom they worked at Jim Hawk would purchase their trailers and trailer parts and services from Crossroads[.]" *Id.* ¶¶ 68, 89. The complaint does not allege that the mechanics had an employment contract or that while the mechanics were

14

still employed by Jim Hawk they set up a rival business, were employed by a competing enterprise, secretly communicated with or solicited or hired Jim Hawk's employees, or misrepresented to Jim Hawk their intention to remain employed.

The line between preparing to compete and actively competing or not preferring one's employer is difficult to discern. *See Akins*, 616 N.W.2d at 886. Accepting the allegations as alleged in the complaint as true and construing the facts in the light most favorable to Jim Hawk, the non-moving party, the court finds that Jim Hawk has alleged sufficient factual matter to state a claim for breach of duty of loyalty that is plausible on its face.

## CONCLUSION

The claims against the defendants for tortious interference with business relations, civil conspiracy, unjust enrichment, and unfair competition are wholly displaced by the UTSA. The claim for breach of the duty of loyalty is displaced in part by the UTSA. Jim Hawk has stated a claim on which relief can be granted as to the remaining part of the duty of loyalty claim that survives the UTSA displacement analysis. Thus, it is

ORDERED that the mechanics' motion to dismiss (Docket 43) is granted in part and denied in part.

Dated March 17, 2021.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE