UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JIM HAWK TRUCK-TRAILERS OF SIOUX FALLS, INC., | 4:20-CV-04058-KES |
| Plaintiff, | |
| vs. | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL |
| CROSSROADS TRAILER SALES & SERVICE, INC., ALVIN SCHOLTEN, MARK SNEVE, MICHAEL FALOR, DAVID JENSEN, TRACY THOMPSON, NICK BIG EAGLE, CHAZ KOHERST, TAYLOR LARSON, and DEREK FALOR, | |
| Defendants. | |

Plaintiff, Jim Hawk Truck Trailers of Sioux Falls, Inc., moves to compel Defendant Crossroads Trailer Sales & Services, Inc., to respond to an Interrogatory and multiple Requests for Production of Documents (RFP), and to produce electronically stored information (ESI) responsive to seven search terms. Docket 104. Crossroads opposes the motion. Docket 110. For the following reasons, the court grants in part and denies in part Jim Hawk's motion.

## BACKGROUND

A full factual background was provided by this court in its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss. Docket 78. The following is a summary of the facts relevant to this discovery dispute.

On March 27, 2020, Jim Hawk brought suit against Crossroads and nine of its former employees (Individual Defendants) for misappropriation of trade secrets, breach of the duty of loyalty, tortious interference with businesses relations and employee relationships, civil conspiracy, unjust enrichment, unfair competition, and defamation.[1] Docket 1. Jim Hawk alleges that Crossroads has engaged in unfair business practices by hiring all the Individual Defendants within a short period of time and obtaining trade secrets and customer contacts as a result. *Id.* ¶¶ 55, 59-60. Jim Hawk alleges that these practices have greatly expanded the scope and profitability of Crossroads' business while diminishing that of Jim Hawk. *Id.* ¶ 71.

Jim Hawk served its First Set of Interrogatories and RFPs on Crossroads on September 15, 2020. Docket 105-1 ¶¶ 4, 7. Since then, the parties have engaged in extensive back in forth over various discovery disputes.[2] *See generally* Docket 105-1. Upon failure to resolve several disputes, Jim Hawk filed the instant motion to compel discovery under Federal Rule of Civil Procedure 37(a) and D.S.D. Civ. LR 37.1. Docket 104. The discovery requests at

---

[1] Not all claims are brought against all defendants. The only claims not brought against defendant Crossroads are breach of the duty of loyalty and defamation. Docket 1.

[2] Both the Federal Rules of Civil Procedure and this district's local rules require that parties meet and confer in an attempt to resolve discovery disputes before filing discovery motions. *See* Fed.R.Civ.P. 37(a)(1); D.S.D LR 37.1. Jim Hawk's counsel asserts that it has done so. Docket 105-1 ¶ 3. Crossroads does not disagree. *See generally* Docket 110. Thus, the court finds the meet-and-confer prerequisite to be satisfied.

issue are Interrogatory No. 6, RFPs Nos. 21, 22, 33, and 55, and seven ESI search terms.[3] *See* Docket 105 at 1-3.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the scope of discovery in civil matters, providing:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The scope of discovery under Rule 26(b) is extremely broad." *Burke v. Ability Ins. Co.*, 291 F.R.D. 343, 348 (D.S.D. 2013). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

If a party does not produce requested documents, the party seeking discovery may move for an order compelling production. *See* Fed. R. Civ. P. 37(a)(3)(B). "The requesting party must make a threshold showing that the

---

[3] At the time of filing, Jim Hawk's Motion to Compel claimed "Request for Production No. 9 – Financial Information Supplementation" to be in dispute. Docket 105 at 3. Crossroads later supplemented its response to Request No. 9. Docket 110 at 2. Jim Hawk has informed the court that it now considers this dispute resolved, and it withdrew it from its motion to compel. Docket 113 at 1.

3

requested information falls within the scope of discovery under Rule 26(b)(1)." *Sprint Commc'ns Co. L.P. v. Crow Creek Sioux Tribal Ct.*, 316 F.R.D. 254, 263-64 (D.S.D. 2016) (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Id.* at 264 (quoting *E.E.O.C. v. Woodmen of the World Life Ins. Soc.*, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007)).

Once the requesting party has made a thresholding showing of relevance, the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive. *See Penford Corp. v. Nat'l Union Fire Ins. Co.*, 265 F.R.D. 430, 433 (N.D. Iowa 2009); *St. Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000). The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive" is insufficient to carry the resisting party's burden — that party must make a specific showing of reasons why the relevant discovery should not be had. *Cincinnati Ins. Co. v. Fine Home Mangers, Inc.*, 2010 WL 2990118, at *1 (E.D. Mo. July 27, 2010); *see also Burns v. Imagine Films Entm't, Inc.*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

## DISCUSSION

### I.      Interrogatory No. 6 – Employee Identification

In this interrogatory, Jim Hawk requests that Crossroads, "Identify all employees of Crossroads for the time period of December 1, 2018 through the present. For each employee identify his or her full name, position with Crossroads, and job duties." Docket 105-1 ¶ 11. The interrogatory was later limited to employees in the trailer sales and the parts and service sales departments working in South Dakota and Minnesota. *Id.* at 83, 115. Crossroads objects, claiming the information requested is irrelevant, unreasonably cumulative and duplicative, and overbroad. Docket 110 at 5-6.

Crossroads' main contention is that Jim Hawk has failed to make a threshold showing of relevance for this breadth of employee information. *Id.* Instead, Crossroads has offered to specify how its total employee-count has changed since 2018. *Id.* at 6; Docket 105-1 at 94. But this would only provide some of the information Jim Hawk is seeking. Jim Hawk seeks the context of titles and duties to fully understand Crossroads' business expansion. Docket 113 at 3. Because this expansion is fundamental to Jim Hawk's various allegations of unfair competition, this information is relevant.

Crossroads also argues that Jim Hawk can obtain the information sought by Interrogatory No. 6 through other means, namely, through depositions of Crossroads' employees and financial documents, thus making this request unreasonably cumulative and duplicative. Docket 110 at 5-6. But Crossroads has not shown that any one person, or combination of people, who

Jim Hawk could depose would have all the information Jim Hawk seeks.
Likewise, the financial information already provided, and that to be provided in
accord with the later provisions of this order, only provides quantitative
information about Crossroads' growth, and not the other employment
information Jim Hawk seeks through this interrogatory.

Although Crossroads objects that Interrogatory No. 6 is overbroad, it has
not explained how it is overbroad, particularly given the agreed-to limitation.
*See* Docket 110 at 5-6. Thus, the court orders Crossroads to respond to
Interrogatory No. 6 by identifying employees in its trailer sales and parts and
service sales departments in its South Dakota and Minnesota locations from
December 1, 2018 to the present by full name, position, and job duties.

## II.     Request for Production No. 21 – Bank Statements or Records

Jim Hawk requests production of "[a]ny and all bank statements or
records for Crossroads for the period of time from January 1, 2018 through the
present." Docket 105-1 ¶ 13. Crossroads objects, claiming this request is
overbroad, irrelevant, vague, and ambiguous. Docket 110 at 7-9.

The court agrees that this request is overbroad regarding Crossroads'
Albert Lea, Denver, Wichita, and Garden City branches. Jim Hawk's claims
only concern Crossroads' hiring of the nine Individual Defendants, who all now
work at its Luverne and Sioux Falls locations, and sales to former Jim Hawk
customers at the Luverne and Sioux Falls locations. Docket 105 at 14-15;
Docket 113 at 5. Jim Hawk has not alleged wrongful conduct beyond these two
locations. *Id.* Thus, the court will limit this request to bank statements or

6

records for Crossroads' Sioux Falls and Luverne locations from 2018 to the present.

With this limitation, the request for bank statements or records is relevant. Courts have held financial records to be relevant and discoverable in cases alleging unfair business practices. *See Upchurch v. USTNET, Inc.*, 158 F.R.D. 157, 160 (D. Or. 1994) (finding documents "indicating [defendant's] financial condition" relevant to claims of tortious interference with contract and prospective advantage and unfair competition); *W. Air Charter v. Schembari*, 2018 WL 6537158, *5 (C.D. Cal. Apr. 9, 2018) (finding plaintiff's "balance sheet, income statement, and statement of cash flows" relevant to punitive damages on counterclaim of intentional interference with prospective economic advantage). Here, Crossroads' bank statements are relevant to Jim Hawk's claims of misappropriation of trade secrets, tortious interference with businesses relations and employee relationships, unjust enrichment, and unfair competition. Additionally, these records are relevant to Jim Hawk's claim for damages and for disgorgement of Crossroads' profits.

The court also finds that the request is neither vague nor ambiguous. "The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity." *Clark v. Unum Grp.*, No. 4:20-CV-04013-KES, 2021 WL 4134520, at *5 (D.S.D. Sept. 10, 2021) (quoting *Stoldt v. Centurion Indus., Inc.*, 2005 WL 375667, at *2 (D. Kan. Feb. 3, 2005)). The extent of Crossroads' objection here is a parenthesized restatement of RFP No. 21. Docket 110 at 7. This is not sufficient. Additionally, responding parties

7

must "exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized" in requests. *Clark*, 2021 WL 4134520 at *5. Reason and common sense dictate that this request seeks records or statements issued by a bank regarding Crossroads' accounts, and it should easily be understood by Crossroads as such.

Finally, the request is neither cumulative nor duplicative. Though Crossroads has already produced a number of financial documents for its Sioux Falls and Luverne locations, such as six years of income statements and commission sales reports for the Individual Defendants, none address fixed and variable costs. Docket 111 ¶ 6, Docket 105-1 at 46, 116, 145. Crossroads does not dispute this. *See* Docket 110 at 7-9. Thus, the court orders Crossroads to produce bank statements and records for its Sioux Falls and Luverne locations from 2018 to the present.

### III.   Request for Production No. 22 – Income Tax Returns

Jim Hawk requests production of "[a]ll income tax returns filed by Crossroads for the period of time from 2018 through the present." Docket 105-1 ¶ 13. Crossroads objects, claiming this request is vague, ambiguous, and irrelevant. Docket 110 at 7-9. It also objects on the grounds that tax returns are generally not discoverable. *Id.* at 8.

Although there is no absolute privilege preventing the discovery of tax returns, courts generally disfavor their disclosure. *E.E.O.C. v. Ceridian Corp.*, 610 F. Supp. 2d 995, 996 (D. Minn. 2008); *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 539 (D. Kan. 2006); *Harvest Meat Co. v. Robert Dairy Co.*, 2005

8

WL 3470340, *4 (D. Kan. Dec. 19, 2005). The court applies a two-part test in determining whether disclosure is appropriate. *Glenford Yellow Robe v. Allender*, 2010 WL 1780266, *4 (D.S.D. Apr. 30, 2010). "[F]irst, the court must find that the returns are relevant to the subject matter of the action. Second, the court must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." *Id.* (citing *Hilt v. SFC Inc.,* 170 F.R.D. 182, 189 (D.Kan.1997)). The party seeking production has the burden of showing relevancy. *Hilt*, 170 F.R.D. at 189. Once relevancy is shown, the burden shifts to the resisting party "to show that other sources exist from which the information is readily obtainable." *Id.*

Jim Hawk has shown that the tax returns are relevant because they would aid in assessing damages and evaluating changes in the growth of Crossroads' business following the actions alleged in this lawsuit. Docket 105 at 14. Although Crossroads incorrectly places the burden under the second prong on Jim Hawk, it ultimately does show that other sources exist from which the information sought by Jim Hawk is readily obtainable. Docket 110 at 8. Crossroads has produced numerous financial documents concerning its Luverne and Sioux Falls locations. Docket 111 ¶ 6. These include six years of income statements and commission sales reports for the Individual Defendants. Docket 111 ¶ 6; Docket 105-1 at 46, 116, 145. These documents, in addition to those to be produced under the court's order on RFP No. 21, readily provide the financial growth information Jim Hawk seeks through Crossroads' tax returns. Jim Hawk fails to explain what further information

9

these tax returns will provide that the other records will not. *See* Docket 105 at 14-15; Docket 113 at 5. Thus, the motion to compel discovery as to RFP No. 22 is denied.

## IV.   Request for Production No. 33 – Documents Identifying Customers and Customer Targets

Jim Hawk initially requested that Crossroads, "[p]roduce any and all documents and other information that identify Crossroads' customers and customer targets for the period January 1, 2017 to present." Docket 105-1 ¶ 13. During the meet and confer, the parties agreed to narrow this request to their mutual customers. Docket 105-1 at 83, 116, 149. These customers have already been identified through Jim Hawk's production of its customer list and Crossroads' subsequent comparison of that list with its own. Docket 105-1 at 121, 123; Docket 110 at 20-21. Jim Hawk stipulated that documents responsive to this request can include "sales records, invoices, ESI, text messages, notes, memos, handwritten comments, calendar entries, or any other standard business documentation." Docket 105 at 13, Docket 113 at 6. Thus, RFP No. 33 is seeking any such documents, created since 2017, that reference mutual customers.

Crossroads claims that RFP No. 33 has been satisfied by its supplemental answer to Interrogatory No. 5. Docket 110 at 19-22. Interrogatory 5 requests a list and other identifying information for past and current customers.[4] RFP 33, on the other hand, requests documents related to

---

[4] Interrogatory 5: "Identify with specificity each current or prospective client or customer Crossroads has in the past done business with or currently does

the customers identified as mutual customers. Thus, Crossroads' response to Interrogatory 5 cannot satisfy its document production obligations of RFP 33.

Crossroads also argues that it is unable to respond to RFP 33 because it does "not maintain a list of prospective, target customers, and that no such documents identifying prospective or target customers exist." Docket 110 at 22 (citing to Docket 111). A party cannot turn over information that does not exist. But Jim Hawk has made it clear that it is not just asking for target lists. Docket 105 at 13; Docket 113 at 6. RFP 33 seeks documents that identify mutual, past and current customers. Thus, the court orders Crossroads to produce all documents that identify mutual customers for the period of January 1, 2017 to present.

## V.  Request for Production No. 55 – Documents Regarding Business Cost of Money and Capital Structure

In the final disputed RFP, Jim Hawk requests that Crossroads:

Produce any and all documents and other information related to Crossroads' overall business and Crossroads' business cost of money and capital structure, including but not limited to the cost of both short and long term debt (including interest rate terms such as fixed rates and/or floating rate provisions and borrowing capacity such as line of credit capacity), the return on short term investments, and internal rates of return or hurdle rates used for capital budgeting purposes related to its service, parts and trailer sales business for the period January 1, 2017 to present.

---

business with, or from which Crossroads has contacted, solicited or attempted to solicit business, for the time period of December 1, 2018 through the present. For each such client or customer, provide the full name, the nature of Crossroads' relationship with the customer, if applicable, and the duration of Crossroads' relationship with the customer, if applicable." Docket 105-1 at 16.

Docket 105-1 ¶ 13. Crossroads objects, claiming this request is overly broad, irrelevant, and "vague and ambiguous because the Defendant does not understand what information is being sought by this request." Docket 110 at 9.

Crossroads argues that this request is overbroad because it cannot discern what documents Jim Hawk is seeking. "[A] document request may be overly broad on its face if it uses an omnibus term such as 'relating to,' 'pertaining to,' or 'concerning,' " unless "the omnibus phrase modifies a sufficiently specific type of information, document, or event, rather than large or general categories of information or documents" *Brown Bear v. Cuna Mut. Grp.*, 266 F.R.D. 310, 320 (D.S.D. 2009) (quoting *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2007 WL 1531846, at *7 (D.Kan. May 25, 2007)).

In *Brown Bear*, the plaintiff asked the defendants to provide "all documents relating to any review, analysis, discussion, interpretation, or research pertaining to your use or potential use of the time filing limitation or supplemental filing limitation in any individual state, any group of states, or in any context in which no specific states are mentioned[.]" *Id.* Although this request used an omnibus phrase, the court found the request was not overbroad on its face because the plaintiff had provided precise definitions in previous, similar litigation and the defendant was deemed to have had extensive knowledge of the terminology in use. *Id.* Similarly in *U.S. Fire*, the court found two discovery requests were not overbroad on their face when they had been specifically defined in the requesting party's documents. *U.S. Fire Ins. Co.*, 2007 WL 1531846 at *7. The relevant requests sought "[a]ll

communications between You and any other person or entity … relating to any of the Sites," and "[a]ll reinsurance contracts, agreements or treaties which You believe or contend may afford any right to reinsurance with respect to Bunge's [requesting party's] claims relating to any of the Sites," respectively. *Id.* at *3. The court found that the omnibus term "relating to" modified the term "Sites." *Id.* at *7 This term had been specifically defined in the requesting party's document request to encompass three property sites at issue. *Id.* Unlike the two requesting parties in *Brown Bear* and *U.S Fire*, Jim Hawk has not clarified or specified the terms to which the omnibus phase refers.

Here, Jim Hawk requests "documents and other information related to Crossroads' overall business and Crossroads' business cost of money and capital structure." Docket 105-1 ¶ 13. The omnibus phrase "related to" is only further modified by "overall business" and "business cost of money," which are general categories of information that do little to clarify the types of documentation Jim Hawk is requesting. Crossroads has asked for clarification and explanation numerous times regarding which documents are being requested. Docket 105-1 at 95, 123, 128, 145, 152-53. In response, Jim Hawk merely regurgitated the language of RFP No. 55 and stated that Crossroads' internal financial team should understand this request. *Id.* at 126. Jim Hawk also purports to have "produced some similar financial information" that mirrors the information it is requesting from Crossroads. *Id.* at 116. Crossroads asked for the Bates number of these documents so it could identify which documents Jim Hawk was referencing, but Jim Hawk has not provided

these Bates numbers. *Id.* at 154; Docket 110 at 10. Because RFP 55 uses an omnibus phrase that does not "modif[y] a sufficiently specific type of information, document, or event" and because Jim Hawk has not assisted in clarifying this request, RFP No. 55 is, on its face, overbroad. *Brown Bear*, 266 F.R.D. at 320. Thus, the motion to compel discovery as to RFP No. 55 is denied.

## VI.    Proposed Additional ESI Search Terms

Jim Hawk requests an order compelling Crossroads to provide full and complete ESI production using seven search terms in dispute. Docket 105 at 15. Crossroads objects to these search terms on the basis that they are overbroad, unduly burdensome, not proportional to the needs of the case regarding cost, and unreasonably cumulative and duplicative. Docket 110 at 19.

### A.    Legal Standard for ESI

ESI discovery is governed by the broad scope of Federal Rule of Civil Procedure 26(b). It may be limited, however, if the party resisting discovery can establish that ESI is "not reasonably accessible because of undue burden or cost." Fed.R.Civ.P. 26(b)(2)(B). "Reasonably accessible" refers to the degree of effort in accessing the information, not simply the accessibility of the material's format. *See Bagley v. Yale Univ.*, 307 F.R.D. 59, 65 (D. Conn. 2015) (ESI that was immediately accessible from a search of the defendant university's employees' computers were not necessarily reasonably accessible because of the additional costs associated with reviewing it).

14

If ESI is not reasonably accessible, discovery may nevertheless be ordered "if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)." Fed. R. Civ. P. 26(b)(2)(B). In addition to the three limiting factors of Rule 26(b)(2)(C),[5] courts have adopted the seven-factor test outlined in the Advisory Committee notes to determine whether there is good cause. *See* Fed. R. Civ. P. 26 Advisory Committee's Note to 2006 Amendment; *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 321-24 (S.D.N.Y. 2003); *W.E. Aubuchon Co. v. BeneFirst, LLC,* 245 F.R.D. 38, 43 (D. Mass. 2007); *Helmert v. Butterball, LLC*, 2010 WL 2179180, *8 (E.D. Ark. May 27, 2010). These factors are: (1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation;

---

[5] (C) *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

    (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

    (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

    (iii)    the proposed discovery is outside the scope permitted by Rule 26(b)(1).

*See* Fed. R. Civ. P. 26(b)(2)(B) and (C).

and (7) the parties' resources. Fed. R. Civ. P. 26 Advisory Committee's Note to 2006 Amendment.

### B.    Reasonable Accessibility

Jim Hawk originally requested Crossroads conduct an ESI search of various devices for 13 individuals — the nine Individual Defendants and four additional Crossroads employees — by applying 99 different search terms to the sources of data. Docket 105 at 15; Docket 105-1 at 112-13. Thus far, Crossroads has conducted searches and produced documents using 92 of those terms. Docket 110 at 12-13. Crossroads contends that the remaining seven search terms — "trailer sale*, phone* w/10 contact!*, Pricing!*, Tour*, Order* w/10 part*, Mechanic*, Inside sale*" — dramatically increase the volume of ESI to be reviewed. *Id.*

Like the disputed ESI in *Bagley*, here there is no question as to the immediate accessibility of the raw data. *Bagley*, 307 F.R.D. at 65. The issue is whether Crossroads' burden and expense in reviewing and winnowing down the search results constitutes an undue burden or cost. *Id.* These search terms are estimated to result in 42,216 documents for review. Docket 112 at 11. Crossroads and its ESI vendor estimate the price for processing and applying analytics to this additional data to be between $3,150-$4,275. Docket 111-4. Crossroads further provides a high-end cost estimate of $114,586.29 for 600 hours of attorney time to review the documents. Docket 110 at 16-17. Jim Hawk does not dispute any of these estimates. *See* Docket 105 at 8-11,15; Docket 113 at 8-9. Instead, it argues that these additional expenses are

16

proportional to the needs of the case because the search terms are only being pulled from a discrete six-month period. Docket 113 at 9. This argument is unpersuasive. It is the amount of documents produced, not the period of time to which these search terms are applied, that results in burdensome costs. The court finds that the ESI produced by using the seven search terms in dispute is not reasonably accessible.

### C.    Good Cause Exception

The court next turns to whether Jim Hawk has shown "good cause," analyzing the factors laid out above. As to the first factor, the request is sufficiently specific because the search terms are specifically laid out. This factor weighs in favor of Jim Hawk. The second factor favors Crossroads. There has been extensive discovery in this case, including the production of phone records and text messages for the Individual Defendants, commission sales reports, sale invoices, and financial income statements (including those compelled by this order). Docket 105-1 at 68, 141, 145. Likewise, Crossroads has already produced ESI responsive to 92 search terms of 13 employees' data. *Id.* at 123, 156-60. A vast quantity of information is already accessible from these sources. The third factor is irrelevant because spoilage of previous electronic data is not at issue.

The fourth and fifth factors favor Crossroads. Crossroads and its ESI vendor assert that the relevancy rate of these search terms will be incredibly low. Docket 110 at 11-19. Specifically, they have utilized a continuous active learning (CAL) model to determine the relevancy of previous searched ESI. *Id.*

at 14. This model has deemed 7% of its total ESI review as relevant. *Id.* at 15. The last 2,000 documents reviewed by this model have not exceeded a relevancy rate of 5%. *Id.* at 14. Crossroads expects further review of ESI to have a similarly low rate of relevance. *Id.* at 15. Jim Hawk does not dispute these figures. *See* Docket 105 at 8-11, 15; Docket 113 at 8-9. Instead, it argues that Crossroads cannot "represent with any degree of certainty, that there will be <u>no</u> discoverable documents produced from these searches." Docket 113 at 8. Jim Hawk then provides one sentence explanations for how each search term corresponds with facts alleged in this case *Id.* at 8-9.[6]  These rebuttals do not persuade the court of the likelihood of finding information important to the case. The sixth factor favors Crossroads. Although the claims in this case are of substantial importance to the parties, they are not of public concern. *Compare W.E. Aubuchon Co.*, 245 F.R.D. at 44 (localized breach of fiduciary duty claim against administrator of ERISA plan), *with Major Tours, Inc. v. Colorel*, , 2009 WL 3446761, at \*4 (D.N.J. Oct. 20, 2009) (the sixth factor weighed in favor of "broad discovery" because of allegations of racial discrimination by public employees) and *U.S. ex rel. Guardiola v. Renown Health*, 2015 WL 5056726, \*8 (D. Nev. Aug. 25, 2015) (*qui tam* actions "imbue[d] . . . with heightened importance" because they are "an important means of addressing fraud claims

---

[6] For example, Crossroads objects to the search term "trailer sale\*" as it is found in many of the custodians' email signature blocks. Docket 110 at 16. This provides a hit on nearly every email in question with no regard to relevancy. *Id.* Jim Hawk responds to this simply with, "Jim Hawk knows that Crossroads was making 'trailer sales' to Jim Hawk's customers after hiring its employees in an effort to divert the business." Docket 113 at 8.

on behalf of taxpayers"). Finally, the seventh factor is neutral because neither party has provided the court with any information about their resources. *See W.E. Aubuchon Co.*, 245 F.R.D. at 44 (where both parties did not provide the court with any information about their resources, the court weighed the seventh factor as neutral "[g]iven the lack of information available to the Court").

"A court should not treat the 'good cause' factors as a checklist; rather, the factors should be weighed by importance." *Helmert*, 2010 WL 2179180, at *9. In *Helmert*, the requesting party had no idea what discoverable information would be obtained by accessing not reasonably accessible backup tapes. *Id.* The court found this low likelihood of finding relevant, responsive information to be the most important "good cause" factor weighing in favor of the resisting party. *Id.* Likewise, the low relevancy rate of current ESI and Jim Hawk's failure to show a heightened likelihood that new and relevant information may be discovered using the search terms in dispute is the most important "good cause" factor here. The substantial burden and expense required to produce the sought ESI documents cannot be justified by this low likelihood. *Id.*; *see also* Fed. R. Civ. P. 26(b)(2)(C)(iii); and Fed. R. Civ. P. 26(b)(1). Thus, Jim Hawk fails to show good cause for the discovery of documents that are not reasonably accessible. As a result, the motion to compel discovery as to the seven ESI search terms in dispute is denied.

## VII.   Attorneys' Fees

Jim Hawk seeks an award of attorneys' fees incurred in bringing this motion to compel. Docket 104 ¶ 9. When a motion to compel is granted in part and denied in part, apportionment of attorneys' fees is governed by Federal Rule of Civil Procedure 37(a)(5)(C). Under this rule, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion[,]" but may not award costs if the exceptions in Rule 37(a)(5)(A) apply. *Haukaas v. Liberty Mut. Ins. Co.*, No. 4:20-CV-04061-KES, 2022 WL 1719412, at *7 (D.S.D. May 27, 2022) (citing to *Hurley v. State Farm Mut. Auto Ins. Co.*, 2012 WL 1600796, at *5 (D.S.D. May 7, 2012)). Those exceptions are when the movant filed the motion before a good faith effort to resolve the dispute without court action, the resisting party's lack of response or objection was substantially justified, or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). The court will only consider these exceptions regarding the portions of the motion on which Jim Hawk prevailed, as the court will not award fees for the portions which failed. *See Haukaas*, 2022 WL 1719412, at *8.

Both parties agree that Jim Hawk did attempt to resolve the discovery disputes over Interrogatory 6, RFP 21, and RFP 33 with Crossroads before filing this motion. Docket 104 ¶ 8; *see generally* Docket 105-1. Thus, the exception under 37(a)(5)(A)(i) is inapplicable.

Under the "substantially justified" exception, "[t]he party resisting sanctions bears the burden of showing that its position was substantially

justified." *Mgmt. Registry, Inc. v. A.W. Cos.*, 2020 WL 1910589, at *13 (D. Minn. Apr. 20, 2020) (citing *Bah v. Cangemi Inc.*, 548 F.3d 680, 684 (8th Cir. 2008)); *see Kirschenman v. Auto-Owners Ins.*, 2012 WL 1493833, at *2 (D.S.D. Apr. 27, 2012) (awarding attorneys' fees for the requests for production for which the defendant "ma[de] no argument as to how it was substantially justified in refusing to answer"). "[S]ubstantial justification means that 'reasonable minds could differ as to whether the party was justified in resisting the discovery sought.' " *Kirschenman*, 2012 WL 1493833, at *1 (cleaned up) (quoting *Oyen v. Land O'Lakes, Inc.*, 2009 WL 536606 (D.S.D. Mar. 3, 2009)). The presence of objections to discovery requests alone does not demonstrate that "reasonable minds could differ." *Id.* at *2.

Here, Crossroads has the burden of showing that its position was substantially justified. *Mgmt. Registry*, 2020 WL 1910589, at *13. It has provided no explanations as to how their objections were "substantially justified." Docket 110 at 23. The presence of its objections to Interrogatory No. 6, RFP No. 21, RFP No. 33 are not enough to show that they are "substantially justified." *Kirschenman*, 2012 WL 1493833, at *2. Thus, the exception under 37(a)(5)(A)(ii) is inapplicable.

The court finds no evidence that other circumstances make an award of expenses unjust, so the exception under Rule 37(a)(5)(A)(iii) is inapplicable. Because none of the exceptions to Rule 37(a)(5)(C) are applicable, the court may apportion the reasonable expenses for this motion. Thus, the motion for attorneys' fees is granted, and Jim Hawk is directed to submit an affidavit of its

costs and attorneys' fees associated with Interrogatory No. 6, RFP No. 21, RFP No. 33 within 28 days of this order, along with an accounting of attorney hours and a description of what those hours represent in terms of attorney work. Crossroads will have 21 days thereafter to file objections to the hours or amount of fees requested. Jim Hawk will then have 14 days to file a reply if it wishes to do so.

**CONCLUSION**

It is ORDERED that Jim Hawk's motion to compel (Docket 104) is granted as to Interrogatory No. 6, RFP No. 21 as limited herein, and RFP No. 33. Jim Hawk's motion is denied as to RFP No. 22, RFP No. 55, and the Proposed Additional ESI Search Terms.

It is FURTHER ORDERED that Jim Hawk is entitled to reasonable costs and attorneys' fees for bringing this motion to compel. Jim Hawk must file an affidavit with proof of service setting forth the time reasonably spent on this motion attributable to Interrogatory No. 6, RFP No. 21, and RFP No. 33, the hourly rate requested for attorneys' fees and costs, and any factual matters pertinent to the motion for attorneys' fees within 28 days of this order. Crossroads' objections to the allowance of fees are due within 21 days after receipt of service of Jim Hawk's motion and affidavit. Crossroads may, by counter affidavit, controvert any of the factual matters contained in Jim Hawk's

motion and may assert any factual matters bearing on the award of attorneys'
fees. D.S.D. LR 54.1(C). Jim Hawk will have 14 days after service of defendants'
response in opposition to file a reply.

      DATED July 29, 2022.

                        BY THE COURT:

                        /s/ *Karen E. Schreier*

                        KAREN E. SCHREIER
                        UNITED STATES DISTRICT JUDGE